Judge Robertson
delivered the opinion of the Court.
Edward Dehaven, having bought of William Hargi«, three small tracts of land (one of 50 acres, one of 200, and one of 250 acres,) received from him a deed, on the 12th of March, 1801, conveying all his title in them to him.
Dehaven sold, and conveyed to James Moorman 125 acres of this land, for ,§737 50 cents, and to John Moorman 75 acres, for §262 50 cents. James Moorman sold and conveyed his 125 acres to Levi Ashbrook.
Edward Dehaven, also sold and conveyed to his son Isaac Deliaven, 214 acres of the land, which he purchased from Hargis.
In addition to the covenant, in the deed of William Hargis, he and Isaac Hargis executed their bond to Edward Dehavan, on the 20th March, 1801, to secure to him the consideration paid by him for the land, if the title should be ascertained to be insufficient.
It appears that in 1818 or 1819, William Hardin obtained tf-judgment in' ejectment, against Barton Mattingly, to whom Edward Dehaven had conveyed a small part of the land, which he had purchased from Hargisfand that, in this suit, the fact was disclosed, that the land conveyed by William Hargis to Edward Dehaven, was granted to Thomas Hargis, from whom it had descended to his eight children, of whom William Hargis was one; and that William’s only title to the land, was his joint and undivided interest, asoné of his deceased father’s heirs.
On ascertaining this fact, John Sterrit, who was the son-in-law of Edward Dehaven, and seems to have been one of his advisers and assistants, in defending, his title, ascertained where the heirsof Thomas Har-gis resided, and with the assistance of Isaac Hargis, procured from all of them, except William, a conveyance to himself, of all their right to the land purchased by Edward Dehaven, from William .Hargis, for *28 tíie consideration of $10, which he paid to each; and also in consideration of a promise, made by him in writing, to exonerate Isaac Hargis, from responsibility on his bond to Edward Dehaven, and to release to Dehaven, for the benefit of Isaac Ilargis, the adversary claim of Mark Hardin to the land, provided he (Sterrit) should ever purchase it from Hardin. This contract was made in the year 1819.
It seems that Sterrit represented to some of the heirs, that his principal motive for making the, purchase of their interests, was a desire to befriend Edward Dehaven, and that this representation combined with the belief that Hardin’s tide to the land, was superior to theirs, influenced them to convey their interests to Sterrit, for a price so inconsiderable.
Afterwards Sterrit, John Moorman and Ashbrook, made a compromise with Hardin, whereby they procured a release from him to themselves, of his adversary claim, for 50 cents an acre, which they paid, by individual contributions, proportioned to the land, which each claimed. Sterrit’s contribution was $70.
Before this compromise, and pending an ejectment by Hardin, against Ashbrook, John Moorman, Isaac Dehaven and David Herndon, all of whom held under Edward Dehaven, James Moorman procured from Edward Dehaven, a mortgage on two slaves and 193 acres of land, tó indemnify him in the event of a recovery of his land by Hardin. Debaven made to Moorman an absolute conveyance; and Moorman at the same time delivered to him a defeasance, which constituted the conveyance a mortgage.
After the date of this mortgage and before the compromise with Hardin, viz: On the 2d day of January, 1821, Ashbrook, James Moorman, and Sterrit made and signed an agreemerit in writing, whereby they mutually stipulated, that Sterrit should convey to Ashbrook, by deed of special warranty, the interest which he had purchased from the heirs of Thomas Hargis. That Moorman transferred absolutely to Sterrit, the two slaves, the title to whom had been conveyed to him by Edward Dehaven, and for whom *29 Sterrit allowed $800. That if Hardin should fail in his ejectment, Moorman should reloase-to Sterrit, his interest in the 193 acres of land, conveyed to by Edward Dehaven. But that if Hardin should succeed, Moorman should convey the 193 acres of land to Ashbrook, and that, in consideration of the foregoing stipulations, Moorman exonerated Edward Dehaven, from all liability to him on his covenant of warranty; and Ashbrook released Moorman from responsibility on his warranty to him.
The contract stales that it was entered into by Sterrit, “measureably to favor and befriend Edward Dehaven,” and the following ratification, is subjoined to it: “I, Edward Dehaven, am satisfied with the above agreement, as far as I am interested, and do agree to the same. Date above.
“EDWARD DEHAVEN,\Sea3.)”
It is proved that Edward Dehaven, at the time of signing the contract, agreed to surrender to Sterrit the defeasance for the negroes, which he said was not then in his possession.
The slaves were delivered to Sterrit, and he then told Edward Dehaven, that he might enjoy the use of them during his life.
Dehaven also agreed, in April, 1821, to surrender to Sterrit, the bond on Isaac Hargis. This however, was never done. But the bond was given up to said Hargis, in August, 1826, by Isaac Dehaven, without the privity or knowledge of Sterrit.
Sterrit gave his bond to Isaac Dehaven, to convey to him all the right of the seven heirs; of Tilomas Hargis, and of Mark Hardin to the land, which Isaac had purchased from Edward Dehaveu.
Sterrit also paid to Wheatly jCl 9, the consideration advanced by Wheatly to Edward Dohaven, for a small part of the land purchased from William Har-gis, and sold the same parcel for which he thus paid Wheatly, to Isaac Dehaven for, §40 more than the £19; and paid Baird a small sum for land, which Edward Dehaven had sold <o him, and which was covered by Hardin’s claim.
*30 On the 8th of March, 1826, this suit in chancery was instituted,by Edward Dehaven, against Sterrit and James Moorman, charging that Sterrit made the purchase from Hargis’s heirs for him, and as his agent; that he did not understand the written agreement between Sterrit, Moorman and Ashbrook, which he ratified; that it was imposed on him by the fraud of Slcnil, &c. and praying tor a decree that Sterrit be compelled to release to him his claim to the slaves, and to the land purchased from William Hargis, and to the 193 acres mortgaged to Moorman.
Sterrit, in his answer, denies that he made the purchase as the agent of E. Dehaven, bufirisists that he made it for himself, and with his own funds, intending to be liberal with his father-in-law, insists that there was no fraud or misconception in the contract between Moorman, Ashbrook, E. Dehavin and himself, but that it was fair and open, and was perfectly understood by E. Dehaven; that it acknow-' ledges that the purchase was made by him for his own benefit; that he gave his bond to convey 214 acres of the land to Isaac Dehaven, which Edward Dehaven had sold to him,'and that he had bound himself by a bond to Edward Dehaven, to convey to three of his children, the 193 acres of land which had been mortgaged to Moorman; that the $76 which he afterwards paid j.o Hardin, was his just proportion of the whole price agreed to be given to Hardin for his claim, after deducting the land which he had agreed to convey as aforesaid, and that the purchase from Hardin was posterior to the contract between Moorman, Ashbrook, E. Dehaven and himself. He also pleads the statute of Frauds and Perjuries.
.Moorman’s answer, as far it was necessary for him to answer, rs in substance the same.
The circuit court dismissed the bill, and Dehaven appealed.
It is not only not proved, but not even alleged that the purchase from the heirs of Thomas Hargis, was made with the funds of Edward Dehaven, consequently there can be no resulting trust.
Nor is it proved that Sterrit made the purchase as lhe agent, of E. Dehaven. It is, on the contrary, *31 abundantly proved that he did not act as the agent of Dehaven, but only stated, that one object of the purchase was to befriend him. It is neither proved nor alleged that the purchase from Hardin was made with the funds, or for the benefit of Edward Dehaven; and it is quito probable that Hardin’s claim was an available one.
Chancellor will not re-lievo party from legal consequences of contract, when there is neither fraud nor resulting trust, nor if entered into for purpose of defrauding creditors.
it is not proved that there was any fraud or misconception in the ratification of the contract of January, 1821, but it is clearly proved that the contract was distinctly and audibly read to E. Dehaven, by Joseph Allen, who wrote it, and that .Dehaven said^ when he subscribed his name, that he understood it, and that ho then promised to surrender to ¡Sterrit the de-feasance.
The chancellor would not be allowed, therefore, to grant relief to Dehaven, on the ground of a resulting 'trust, or of fraud by Sterrit, or of a purchase by him, as the agent of Dehaven. And consequently, so far as any thing to the contrary appears in the record, Sterrit might have held, not only the negroes, but all the land which he purchased from the heirs of T. Hargis, excepting the 125 acres which he had released to Ashbrook. This, however, might have been somewhat illiberal and unkind, and inconsistent with his declarations of friendship to E. Dehaven. But whether he had redeemed his pledge of friendship or not, would not have been decisive of the right of Dehaven to any relief, because there is no proof of any contract between him and Dehaven, whereby he agreed todo for him any specific thing. For aught that appears, his declarations of friendship were gratuitous and voluntary.
But if We are not mistaken in supposing that he might have retained the whole of his purchase, it is evident that he has manifested much kindness to E. Dehaven. He has relieved him from a heavy responsibility to James Moorman; saved the land which had been conveyed to Isaac Dehaven, and claims for himself, only the two negroes, after E. Dehaven’s death/and about 150 acres of the.3and,.and for which he paid Hardin fifty cents an acre, subsequently to all the other contracts.
Denny, for appellant; Crittenden and . Chapeze. for appellee.
Whether he will eventually have made any proht on the time and money which he has expended, remains to be ascertained hereafter. But, however, this may be, as there is no proof of fraud or trust, Dehaven was not entitled to any decree.
As Sterrit has admitted in his answer, that he is bound to convey the 214 acres of land to Isaac Deha-ven, and the 193 to three other of E. Dehaven’s children, he will not be able to withhold these parcels of land, if he should ever be inclined to do so; and consequently, he can enjoy none of (he land except the remnant which he purchased from Hardin, and in buying which, it is not pretended that there was any' fraud or trust, of any kind.
As to the twoslaves, the contractof January, 1821, would alone be conclusive of his light to them, unless it had been impeached by proof of fraud. It is also conclusive as to the land; it cures all previous defects in Sterrit’s title, if there had been any such defects.
Dehaven still has his recourse on William Hargis, unless he has given it away by a voluntary surrender in 1826, of the bond, to Isaac Hargis.
If Edward Dehaven made or assented to any of the contracts, for the purpose of defrauding any of his creditors, or of enabling him to obtain a pension, he could not ask the chancellor to relieve him from the legal consequences of such improvidence.
This is mentioned only because it is hinted at in the record. There is no allegation or proof of it.
Not perceiving any sufficient reason for reversing the decree of the circuit court, the same is affirmed, with costs and damages.